**Reginald SMITH, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 2-878A264.

Court of Appeals of Indiana, Second District.

Feb. 21, 1980.

Rehearing Denied April 8, 1980.

---

**3.** Ind.Code (1976) 27–1–20–4 (repealed by Acts 1978, P.L. 2, § 2728); replaced by Ind.Code (1979 Supp.) 27–1–2–4.

⟜407(1)

Ernie S. Burke, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant Reginald Smith (Smith) appeals his conviction for armed robbery, challenging sufficiency of the evidence, admission of his confession into evidence, and

admission of the prior statement of a witness.

We affirm.

## FACTS

The facts most favorable to the State are:

On October 12, 1977, Bill Collins, Dan O'Neal and Bernard Meek were robbed at Collins' auto clean-up shop in Indianapolis by three young men. One robber carried a rifle, and one carried a stick or club. At least one had a stocking mask over his face, and one stood around the corner of the building; the victims could identify only the robbers' build and their race. The robbery took only a few minutes. Approximately $3,000 was taken from Collins.

Police were led to Smith by a statement given by Helen Watkins. Helen Watkins is the sister of James Watkins, who was tried separately for the same charge and convicted. The statement she gave to police was that she and a friend had been at the Watkins home as Smith, James Watkins and another person named Mark were preparing to go somewhere. James Watkins and Smith had stocking masks on their heads. Helen's friend accused the three of "going to do something" and James Watkins denied it. Four or five hours later, according to the statement, James Watkins, accompanied by Smith, showed Helen some money and basically recounted the robbery, saying he and "Regie and Mark" had held up some men at a garage; Smith stated there was about three thousand dollars involved.

Acting on this information, the police arrested James Watkins and Reginald Smith, both juveniles.[1] They were detained overnight in the Juvenile Center and separately questioned at 9:00 a. m. the next morning. Mary Smith, defendant's mother, was called to confer with her son. Smith's constitutional rights were explained, and he conferred with his mother. Both of them signed a standard rights waiver form, and

then Smith began to talk about the crime. At one point he requested that his mother leave the room; she did so for approximately two minutes. Smith confessed his part in the robbery, saying he had carried the stick, and James Watkins, the gun; he told what was done with the emptied billfolds, and named the third participant, Mark Hunn.

Smith was sent to Juvenile Court, where a waiver hearing was conducted. He was ordered to stand trial as an adult.

Smith subsequently filed a notice of alibi, claiming he was with one Wanda Carter at the time the robbery occurred; he asserted this defense at trial and claimed he never confessed. The defense's motion to suppress the confession as involuntary was denied. Also at trial, Helen Watkins, called as a witness for the State, denied any knowledge of the matters referred to in her previous written statement.[2] She *did* admit having given the statement to police, and the State introduced the document as substantive evidence over the defense's objection.

After trial to the court, Smith was convicted.

## ISSUES

1. Did the court properly admit Smith's confession as voluntary?

2. Did the court err in admitting the previous statement of Helen Watkins?

3. Was the evidence sufficient to support the conviction?

## DECISION

*ISSUE ONE*—Did the court properly admit Smith's confession as voluntary?

*PARTIES' CONTENTIONS*—Smith contends on appeal, as his lawyer argued at trial, that his confession should have been suppressed as involuntary. The State counters that the police procedures employed did not impugn the voluntariness of the confession.

---

1. Reginald Smith was 17 years old at the time of his arrest.

2. The statement was typed by a policewoman, signed by Helen Watkins, and witnessed (signed) by her mother.

*CONCLUSION* —The confession was properly admitted.

It is somewhat perplexing that at trial Smith claimed no confession ever made and now, on appeal, contradicts his in-court testimony by arguing that his confession should have been suppressed as involuntary. His brief states "The boy started out denying the charge, then ended up admitting it." (Appellant's brief at page 15.)

Our Supreme Court has established on a number of occasions the guidelines which must be followed in eliciting a confession from a juvenile . . . as in *Lewis v. State* (1972), 259 Ind. 431, 288 N.E.2d 138:

> [A] juvenile's statement or confession cannot be used against him at a subsequent trial or hearing unless both he and his parents or guardian were informed of his rights to an attorney, and to remain silent. Furthermore, the child must be given an opportunity to consult with his parents, guardian or an attorney representing the juvenile as to whether or not he wishes to waive those rights. After such consultation the child may waive his rights if he so chooses provided of course that there are no elements of coercion, force or inducement present.

*Id.* at 142. *Accord, Bluitt v. State* (1978), Ind., 381 N.E.2d 458; *Hall v. State* (1976), 264 Ind. 448, 346 N.E.2d 584. *See also Lockridge v. State* (1975), 263 Ind. 678, 338 N.E.2d 275.

In *Bridges v. State* (1973), 260 Ind. 651, 299 N.E.2d 616, the Court added that the trial court must determine that the waiver was "knowingly and intelligently" given. *Id.* at 618.

■ The factual determination by the trial court is two-fold: (1) Were there neutralizing pressures which rendered the confession involuntary, and (2) did those neutralizing pressures result from police presence? *Bluitt, supra* at 461. "Where there is no evidence of pressure, *and* there is evidence of no pressure, the confession is admissible as voluntary." *Id.* at 462.

■ Viewed in this light, the trial court's decision not to suppress the confession was correct. The police advised both Smith and his mother of his rights, including his right to an attorney. They allowed him to consult with his mother and did not question him until he had done so. They exerted no pressure. Although they informed him of the evidence against him (Watkins' statement) and the possible penalty, this merely afforded Smith an opportunity to make a reasoned decision. Smith said he had attended school to the eleventh grade and could read and understand the English language. Both he and his mother read and signed the waiver form. Thus, the Court justifiably found that Smith's waiver was not only voluntary, but also knowingly and intelligently made.

The thrust of Smith's argument on appeal is that his mother's departure while he gave the confession negates its voluntary character. Our research has disclosed no law, nor has the defendant cited any to us, which indicates the parent must be present while the confession is given. *Cf. Massey v. State* (1978), Ind., 371 N.E.2d 703. Indeed, the purpose of requiring the parent's presence is not to witness the statement, but rather to assist in the decision whether to give it. As the *Hall* decision makes clear, the inquiry is whether there was opportunity for meaningful consultation *before* a waiver is made. *See Hall, supra* at 587. At any rate *Smith requested* that his mother leave.

■ Moreover, the evidence conflicts on the question whether Smith's mother was absent during all or only a small part of his confession; the evidence further conflicts on whether any confession was given. If the evidence conflicts on the voluntariness of a confession, or whether it was given at all, we are bound by the trial court's resolution. *See Hall, supra* at 587, *citing Cooper v. State* (1974), 261 Ind. 659, 300 N.E.2d 807.

*ISSUE TWO* —Did the court err in admitting the prior statement of Helen Watkins?

*PARTIES' CONTENTIONS*—Smith's position is that the court erred in admitting into evidence the prior statement of Helen

Watkins. The State responds that the statement was properly admitted as substantive evidence under the *Patterson* rule, an exception to the hearsay rule.

*CONCLUSION*—While much of the statement did fall within the *Patterson* exception, some of it did not; nevertheless, its admission into evidence did not constitute reversible error, for parts of it were admissible for other purposes.

■ Briefly stated, the *Patterson* rule is that a prior statement of a witness is admissible, not only for purposes of impeachment, but also as *substantive evidence*, provided the out-of-court asserter is present at trial for cross-examination. *See Patterson v. State* (1976), 263 Ind. 55, 324 N.E.2d 482. *See also Gutierrez v. State* (1979), Ind., 386 N.E.2d 1207; *Franklin v. State* (1979), Ind., 386 N.E.2d 668; *Tompkins v. State* (1978), Ind., 383 N.E.2d 347; *Taggart v. State* (1978), Ind., 382 N.E.2d 916 (DeBruler, J., concurring); *Buttram v. State* (1978), Ind., 382 N.E.2d 166; *Williams v. State* (1978), Ind., 379 N.E.2d 449; *Rogers v. State* (1978), Ind., 375 N.E.2d 1089; *Johnson v. State* (1978), Ind., 373 N.E.2d 169; *Samuels v. State* (1978), Ind., 372 N.E.2d 1186; *Flewallen v. State* (1977), Ind., 368 N.E.2d 239.

The rationale behind the rule is that the dangers inherent in admitting hearsay testimony are obviated if the asserter can be cross-examined. *See, e. g., Flewallen, supra* at 241. *See generally* 3A Wigmore, Evidence (Chadbourn rev.) § 1018 at 96.

■ Although our Supreme Court has indicated that the rule is not without its limits and may be in need of reconsideration,[3] the Court has specifically held that the witness' subsequent denial of the truth of the matters asserted in the statement does not mandate its exclusion from evidence. *See Cook v. State* (1978), Ind., 379 N.E.2d 965, 966; *Rogers v. State* (1978),

Ind., 375 N.E.2d 1089, 1092. For this reason, Smith's argument that Helen Watkins' repudiation of the statement removes it from the purview of *Patterson* is without merit.

In deciding cases in the wake of *Patterson* the Supreme Court has often stressed the need for the exception when a "turncoat witness" surprises the State, leaving it without the testimony upon which the prosecution depends. *See, e. g., Stone v. State* (1978), Ind., 377 N.E.2d 1372. In *Stone*, Justice DeBruler pointed out that the turncoat witness threatened a "potential loss of major evidence of guilt." *Id.* at 1375. In addition, the Court has emphasized the fact that the asserter, on the witness stand, does not deny having made the statement. *See, e. g., Flewallen, supra* at 241. *See also Patterson, supra* at 484. Here both of these considerations were present: Helen Watkins admitted having made the statement to police, yet denied the truth of its substance, thus sabotaging the prosecution.

It does not necessarily follow, however, that because Helen Watkins was present for cross-examination, the whole of her prior statement was admissible as substantive evidence under *Patterson*. This is because the statement contained statements by two other persons—James Watkins and the defendant himself.

■ In cautioning against over-extensions of *Patterson*, our Supreme Court has warned that the exception must not be used as "a mere substitute for available in-court testimony." *Samuels v. State supra.* If the statement by James Watkins (admitting commission of the robbery by Smith, Hunn, and himself) was offered as substantive proof of the matters he asserted, it would appear to be *beyond* the *Patterson* exception, for James Watkins was not subject to cross-examination by Smith at the time the evidence was introduced.[4]

---

3. *See Samuels v. State* (1978), Ind., 372 N.E.2d 1186, 1187.

4. We address here only the issue of whether the admission of the statement was contrary to Indiana evidence law. Smith's attorney objected to it at trial as also violating the defendant's

right to confrontation under the Sixth Amendment. Although rules of hearsay and confrontation overlap, they are not equivalents. *See California v. Green* (1976), 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489. The issue of confrontation was not briefed and is therefore waived under Ind.R.App.P. 8.3(A).

█ Nevertheless, James' declaration was admissible on other grounds. In *Franklin v. State* (1978), Ind., 386 N.E.2d 668, a similar statement was introduced. The declarant had previously been convicted and was not present for cross-examination. The Court held that although the conversation implicating the defendant could not be used as substantive evidence, it was admissible to show the defendant had been confronted with the accusation and had tacitly admitted it. *See id.* at 669. *See also Wollam v. State* (1978), Ind., 380 N.E.2d 82, 88. The circumstances in the present case indicate that Smith heard the statement by James, for he returned to the house with James and continued the conversation, revealing the amount of money involved. If the defendant participates in a conversation implicating himself, the whole of the conversation is admissible. *Conway v. State* (1888), 118 Ind. 482, 21 N.E. 285. Thus, though not under *Patterson*, the statement by James was admissible for a limited purpose.

██ Similarly, Smith's statement regarding the money was admissible as an admission connecting him with the crime charged. *See Cunningham v. State* (1971), 256 Ind. 135, 267 N.E.2d 181, 183; *Walker v. State* (1894), 136 Ind. 663, 36 N.E. 356, 357. There was nothing to suggest the admission was involuntary, so the only test of its admissibility was relevance. *See Parker v. State* (1978), Ind., 372 N.E.2d 1178, 1179. The defendant's status as a juvenile does nothing to alter this result. His statement was made in the absence of any coercive factors such as police presence. *Cf. Lockridge v. State, supra.* He was present in court to deny the statement. Moreover, the matters contained in his statement before Helen Watkins were more than adequately covered by his own voluntary confession, which had already been admitted.

There was no reversible error in admitting the statement of Helen Watkins.

*ISSUE THREE*—Was the evidence sufficient to support the conviction?

*PARTIES' CONTENTIONS*—Smith argues the evidence was insufficient to support the conviction. The State responds that it was sufficient.

*CONCLUSION*—The evidence was sufficient to support the conviction.

██ Smith contends that the conviction must fail because the victims could not positively identify him as one of the robbers. From the foregoing discussion it is obvious this void was filled by other substantial evidence. The confession by Smith, the prior statement of Helen Watkins and the testimony by the three victims establishing a corpus delicti for the crime mentioned in Smith's confession, constituted more than sufficient evidence of guilt to justify conviction. *See Pawloski v. State* (1978), Ind., 380 N.E.2d 1230; *Smith v. State* (1975), Ind.App., 339 N.E.2d 118.

Affirmed.

SULLIVAN and SHIELDS, JJ., concur.