**James H. DIXON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A03–9301–CR–19.**

Court of Appeals of Indiana,
Third District.

Oct. 18, 1993.

Brian J. May, Drendall & May, South Bend, for appellant-defendant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

HOFFMAN, Judge.

Appellant-defendant James H. Dixon appeals from his conviction for robbery, a Class B felony.

The facts favorable to the judgment disclose that on the evening of August 9, 1989, Scott Thompson was working as the manager of a Kentucky Fried Chicken store (Store) in South Bend, Indiana. Kristen Carlson, Tonia Brickley and Jason Jorgenson were also working at the Store.

At approximately 8:30 P.M., Dixon entered the Store and asked Carlson about the menu and if the Store had been busy. Dixon stated that he would return later. Carlson informed Dixon that the Store closed at 9:00 P.M. Approximately fifteen minutes later, Thompson exited the Store to take out the trash. Outside the Store, Thompson encountered Dixon and an accomplice. Dixon was carrying a gym bag containing a shotgun. The accomplice

placed a knife against Thompson's back and told him to get back inside the Store.

Thompson followed by the accomplice and Dixon entered the Store. Once inside, Dixon pointed the gun at Carlson and told her to raise her arms. The accomplice ordered Thompson, Carlson, Brickley and Jorgenson to lie on the floor. The accomplice then ordered Carlson to open the cash register. Dixon grabbed Carlson by the arm and pulled her to the register, which she opened. Dixon removed $109.00 from the register. Dixon and the accomplice then fled.

Thompson reported the robbery to the police department. The following morning, police officers showed Thompson and Carlson a photographic array. Both Thompson and Carlson selected Dixon's photograph as depicting the person with the gun who robbed the Store.

Dixon was charged by information with robbery, a Class B felony. Following a jury trial, Dixon was convicted and sentenced to a term of ten years' imprisonment. Dixon now appeals.

Dixon raises four issues for review. As restated, the issues are:

(1) whether the trial court abused its discretion in allowing the State to reopen its case to prove venue;

(2) whether the trial court abused its discretion in refusing to grant Dixon's request for a mistrial;

(3) whether the trial court erred in allowing the State to impeach a defense's witness with a prior inconsistent statement; and

(4) whether there was sufficient evidence identifying Dixon as the perpetrator of the crime.

■■■■ First Dixon contends that the trial court abused its discretion in allowing the State to reopen its case to prove venue. The State bears the burden of proving proper venue by a preponderance of the evidence, and circumstantial evidence may be sufficient to establish proper venue. *Evans v. State* (1991), Ind., 571 N.E.2d 1231, 1233.

The record reveals that after the State rested its case-in-chief defense counsel moved for judgment on the basis that venue had not been proven. The State, however, did present evidence that the robbery occurred in South Bend, Indiana. The trial court denied defense counsel's motion, and the State was allowed to reopen its case.

■■■■ The granting of permission to reopen a case is within the trial court's discretion and that decision will be reviewed only to determine whether or not there has been an abuse of discretion. *Ford v. State* (1988), Ind., 523 N.E.2d 742, 745–746. Factors which weigh in the exercise of discretion include whether there is any prejudice to the opposing party, whether the party seeking to reopen appears to have rested inadvertently or purposely, the stage of the proceedings at which the request is made, and whether any real confusion or inconvenience would result from granting the request. *Id.* A trial court does not abuse its discretion when the reopening of the case-in-chief merely grants the State an opportunity to properly present proof of venue. *Warrenburg v. State* (1973), 260 Ind. 572, 576, 298 N.E.2d 434, 436.

■■■■ Dixon has failed to demonstrate that he was unfairly prejudiced by the trial court's actions. Dixon concedes that "there is ample evidence that the robbery occurred in South Bend, Indiana." Thompson testified that the Store was in South Bend, Indiana, and South Bend police officers testified at trial. Evidence demonstrating that the robbery occurred in South Bend is sufficient to prove that the crime occurred in St. Joseph County, hence, establishing venue.

> *See Holler v. State* (1941), 219 Ind. 303, 305, 38 N.E.2d 242, 245 (testimony that defendant's place of business was in Aurora and that he received stolen goods at his place of business was sufficient to establish venue in Dearborn county);
>
> *Butler v. State* (1978), 177 Ind.App. 622, 625–626, 380 N.E.2d 611, 613–614 (although State failed to prove venue by direct evidence, there was sufficient

evidence, including the reasonable inferences flowing therefrom, from which the trier of fact could reasonably find where a crime was committed);

*see also Buhmeier v. State* (1934), 206 Ind. 645, 646–647, 190 N.E. 857, 858 (supreme court will take judicial notice that City of Evansville is in Vanderburgh County).

Furthermore, the St. Joseph County Superior Court, the court in which Dixon was tried and convicted, sits in South Bend, Indiana. The trial court did not abuse its discretion in allowing the State to reopen its case to present direct evidence as to proper venue.

Dixon also argues that the trial court erred when it denied his request for a mistrial. More specifically, Dixon points to South Bend police officer Sergeant Thomas Baker's testimony which suggested that Dixon had been arrested previously.

█ During direct examination, the State elicited testimony from Sgt. Baker regarding the investigation of the robbery. Sgt. Baker stated that certain areas and items in the Store were dusted for fingerprints and explained the general procedure for obtaining fingerprints from a crime scene. In response to Dixon's questioning on cross-examination, Sgt. Baker stated that a request had been made for a fingerprint comparison between fingerprints found at the scene and Dixon's fingerprints. On redirect the following exchange took place:

"Q And can you explain to the jury how a fingerprint comparison is made?

A That I have no training in at all.

Q Or a request is made. Do you take a set of fingerprints that have been taken from a scene and then ask that they be compared to a specific person?

A You normally don't get a full set of fingerprints. You maybe have a partial print, one finger.

Possibly a palm print. And you have a possible suspect. If that person has been arrested, hopefully he has had fingerprints taken, and it's in his record."

Dixon objected to Sgt. Baker's remarks and requested the trial court to admonish the jury or declare a mistrial. In refusing Dixon's request, the trial court noted that Dixon himself "opened the door" to the testimony.

█ The granting of a motion for mistrial is within the sound discretion of the trial court and will be reversed only upon a showing of clear error. *Szpyrka v. State* (1990), Ind., 550 N.E.2d 316, 318. Granting a mistrial is an extreme remedy and is warranted only when the defendant is placed in a position of grave peril to which he should not have been subjected. *Taylor v. State* (1992), Ind., 587 N.E.2d 1293, 1299. A trial court's decision is afforded great deference, as it is in the best position to gauge surrounding circumstances and the potential impact on the jury. *Id.*

█ As the trial court noted, Dixon himself opened the door to the potentially damaging testimony when questioning Sgt. Baker regarding the request for a fingerprint comparison. Once a party raises a subject on cross-examination, it is permissible for the opposing party to pursue that subject on redirect examination. *Kalady v. State* (1984), Ind., 462 N.E.2d 1299, 1309. Accordingly, Dixon was not placed in a position of grave peril which he should not have been subjected to, as it was Dixon himself that opened the door to the testimony.

█ Next, Dixon contends that the trial court erred in allowing the State to present hearsay testimony. The State counters that the testimony was properly admitted for impeachment purposes.

Dixon presented testimony of Scott Lockett, who testified that he alone robbed the Store. The State then presented rebuttal testimony of police officer Elwood Hays. Officer Hays stated that Lockett had given a prior statement regarding the robbery of the Store. When the State asked Officer Hays what Lockett said, Dixon objected on

the basis of hearsay. The State indicated that it was introducing the testimony for impeachment purposes. Over Dixon's hearsay objection, Officer Hays was permitted to testify that Lockett had previously stated that he and Dixon robbed the Store.

■■ The trial court did not err in permitting Officer Hays' testimony regarding Lockett prior inconsistent statement. Once a proper foundation has been laid, extrinsic proof of prior inconsistent statements is admissible for impeachment purposes.

> *Collins v. State* (1988), Ind., 521 N.E.2d 682, 685; *Ellyson v. State* (1992), Ind. App., 603 N.E.2d 1369, 1375.

Dixon's reliance on *Modesitt v. State* (1991), Ind., 578 N.E.2d 649, is misplaced. In *Modesitt* our supreme court in overruling *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482, stated in pertinent part:

> "[A] prior statement is admissible as substantive evidence only if the declarant testifies at trial and is subject to cross examination concerning the statement, and the statement is (a) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition...."

*Modesitt*, 578 N.E.2d at 653–654. As the State points out, *Modesitt* addresses the admissibility of prior statements as substantive evidence. It does not alter the well-established rule pertaining to the admission of prior inconsistent statements for purposes of impeachment. *See Ellyson*, 603 N.E.2d at 1375.

Moreover, this Court notes that Dixon failed to request that the trial court instruct the jury that the evidence was admissible for impeachment, rather than substantive purposes. Therefore, Dixon cannot claim error in the trial court's failure to instruct the jury on the limited consideration that should be given to such evidence. *See Franklin v. State* (1979), 270 Ind. 418, 420, 386 N.E.2d 668, 669. The trial court properly admitted the rebuttal testimony of Officer Hays to impeach Lockett's testimony. *See McAnalley v. State* (1987), Ind.,

514 N.E.2d 831, 835–836 (police officer's testimony regarding witness's statements at scene, which were excluded as hearsay during officer's direct testimony, was admissible on rebuttal to impeach testimony given by witness during defendant's case).

■■ Finally, Dixon argues that there is insufficient evidence identifying him as the perpetrator of the crime. When reviewing a claim of insufficient evidence, this Court neither reweighs the evidence nor judges the credibility of the witnesses. Rather, it looks only to the evidence favorable to the judgment and any reasonable inferences therefrom. If there is sufficient evidence of probative value to support a finding of guilt beyond a reasonable doubt, this Court will affirm the conviction. *Nelson v. State* (1988), Ind., 528 N.E.2d 453, 454.

■■ Carlson and Thompson had the opportunity to observe Dixon during the robbery. Carlson also observed Dixon, when he entered the Store at approximately 8:30 P.M., for approximately three minutes. Carlson immediately recognized Dixon when he returned to the Store for the robbery. Thompson observed Dixon when he approached the Store. Both Carlson and Thompson selected Dixon's photograph as the person carrying the gun who robbed the Store. Dixon was again identified by both victims at trial. This evidence is sufficient to sustain the identification of Dixon as one of the robbers. *See Lacy v. State* (1982), Ind., 438 N.E.2d 968, 972. The judgment of the trial court is affirmed.

Affirmed.

SHARPNACK, C.J., and GARRARD, J., concur.